[File No. 1038.]

SILAS W. PRESCOTT, Respondent, v. GEORGE BROOKS, Appellant.

(94 N. W. 88.)

772

Opinion filed December 10, 1902.   On rehearing March 10, 1903.

*Cochrane & Corliss,* for appellant.
*W. H. Standish,* for respondent.

Young, J.   This case was before this court on a former appeal.   11 N. D. 93, 90 N. W. 129.   The former appeal was taken from only a portion of the judgment and the defendant then sought, as he now seeks, a retrial under § 5630, Revised Codes, which authorizes retrials in actions tried to the court without a jury.   A majority of the court reached the conclusion that a retrial was not authorized by said section upon an appeal from only a part of a judgment, and the appeal was dismissed without prejudice.   The defendant has now appealed from the entire judgment.

Counsel for respondent has interposed a motion to dismiss the appeal, based upon two grounds.   The first is that it was not taken within the time allowed by law.   This ground was urged in a similar motion upon the former appeal, and was ruled adversely to the respondent. The same reasons exist for denying the present motion.   The judgment in question was entered on August 4th, 1900, and written notice of entry of judgment was served by appellant upon respondent on the same day.   No notice of entry of judgment has ever been served by respondent upon the appellant.   The present appeal was taken on May 10th, 1902.   It will thus be seen that the appeal was taken more than a year after the entry of the judgment.   But that fact is of no importance under our statute.   The one year time limit for appealing does not begin to run from the entry of judgment, but from the service of the statutory notice.   On this point we said in the opinion on the former appeal: "The time within which appeals may be taken to this

court is regulated by § 5605, Rev. Codes, which reads as follows: 'An Appeal from a judgment may be taken within one year after the entry thereof by default, or after written notice of the entry thereof in case the party against whom it is entered has appeared in the action, and from an order within sixty days after written notice of the same shall have been given to the party appealing. . . .' This not being a judgment by default, an appeal could be taken by a party desiring to appeal therefrom at any time prior to the expiration of the one-year period allowed, after written notice of the entry thereof. It will also be noted that, as to this judgment, the time for appealing did not begin to run from its rendition, nor from its entry; neither did it begin to run from actual notice or knowledge of the entry of the judgment. The language of the statute is explicit. It grants a period which does not expire until one year after written notice of the entry of the judgment in which to appeal. This statute places it in the power of either party to a judgment to set the time for an appeal running against his adversary, by serving upon him a written notice of entry of judgment. But it is clear that by serving such notice a party does not set the time running against himself, and thus limit his period for appealing. His service of notice is to cut off his adversary's time for appeal." In addition to the authorities cited, in the foregoing opinion, see cases cited 2 Cyc. 798. The second ground of the motion is "that if the right of appeal did not accrue on August 4th, 1900, (when the judgment was entered and notice of entry served by appellant) it has never yet accrued to appellant and his appeal must be dismissed as having been prematurely taken." There is no merit in this contention. The right of appeal arose, it is true, when the judgment was entered. But counsel has fallen into the mistaken belief that the statute gives a fixed period of one year in which to appeal. This is not true. The time for appealing can never be less than one year, but it may be more, and will be if the parties fail to exercise their right to limit the time by serving the statutory notice. The right to appeal arises upon the entry of judgment and it continues until it is cut off by the service of the statutory notice. The function of the written notice of entry, as we attempted to make clear in the former opinion, has nothing to do with creating a right to an appeal, but relates entirely to fixing the time

when the right ends, and that time is one year after the service of the written notice of entry of judgment. Briefly stated, the right of appeal accrues upon the entry of judgment and continues until cut off by the service of the statutory notice and the lapse of one year after such service. In this case the respondent has not limited the appellant's time for appealing by service of this notice.

The present appeal presents the entire case for review. The statement of the case contains all of the evidence offered at the trial. The appellant specifies therein that "he desires the supreme court to review on the appeal herein the entire case, with respect to the $500 note and mortgage . . . and the counterclaim . . . of the defendant upon said note, . . . and the question whether said mortgage has ever been paid; and that the court erred in the 7th finding of fact . . . and in its first conclusion of law touching the payment of said note and mortgage." Section 5630, Revised Codes, which authorizes trials de novo in this court, provides for but two kinds of specifications. Where the appellant wishes to review the entire case he shall so specify; when he wishes to review but a portion of the facts he is required to specify the particular facts, naming or pointing them out definitely. Farmers' & M. Nat. Bank v. Davis, 8 N. D. 83, 76 N. W. 998; Douglas v. Richards, 10 N. D. 366, 87 N. W. 600. It is patent that the appellant has not specified or pointed out any particular facts for review in the specification above quoted. He has, however, demanded a review of the entire case, and we are of opinion that the additional and useless language contained in the specification should be treated merely as surplusage and should not operate to entirely defeat a review in this court, particularly in view of the fact that the statement contains all the evidence presented to the trial court.

A proper consideration of the questions involved requires a restatement of the facts set out in the former opinion as follows: Plaintiff instituted this action for the purpose of determining the amount due on his two promissory notes, secured by mortgages in favor of one S. W. McLaughlin, upon a tract of land situated in Pembina county. The mortgage first executed secured a principal note for $500, with interest coupons thereto attached. This mortgage was executed on December 2, 1887. The other mortgage was given on December

9, 1889, and secured the payment of a principal note of $880, with interest coupons attached thereto, and covered the same land. Both notes were non-negotiable. The last, or $880 note, was given by plaintiff to pay the $500 note. The excess above the amount due on the $500 note was paid to plaintiff by McLaughlin in cash, but the latter did not cancel the $500 note, or release the mortgage securing the same. McLaughlin assigned both mortgages to other parties. The $500 note and mortgage was transferred to one Helen M. Andrews, and the $880 note and mortgage, to the defendant George Brooks. Both were made defendants in the action. No objection was made by either party to the form of the action or to their joinder as defendants. They answered separately, and demanded judgment for the full amount secured by their respective mortgages and a foreclosure of the same. Plaintiff claims that he should have credit for the $500 which was not paid to him from the $880 loan, and demands that the same be credited either upon the $500 note or the $880 note. Helen M. Andrews alleged in her answer that the $500 note had not been paid, and that the mortgage securing the same was a first lien on the premises for the full amount of the note, with interest. Defendant Brooks, in his answer, denied that the $500 note had not been paid, and alleged that S. W. McLaughlin was the agent of Helen M. Andrews for the collection of the $500 note, and that "said mortgage and note alleged to be held by said defendant Helen M. Andrews was fully paid to said S. W. McLaughlin on or about December 9, 1889," which was the date of the execution and delivery of the $880 mortgage, and asked that his $880 mortgage be declared a first lien on the premises and that the Andrews mortgage be declared paid and canceled. After issue was joined, but before trial, the defendant Brooks purchased the $500 note, and took an assignment of the mortgage securing the same, so that when the case came to trial he was the owner of both mortgages. The pleadings, however, were not amended. The case was tried to the court without a jury, under the provisions of § 5630, Revised Codes 1899. The trial court sustained the allegations contained in the answer of Brooks, and found, as a conclusion of law, "that the giving of the $880 note by the plaintiff to the said S. W. McLaughlin paid and satisfied the said $500 note and mortgage aforesaid, and that plaintiff

was entitled to judgment canceling said note and mortgage," and that defendant Brooks is entitled to "the usual decree of foreclosure and sale on the said $880 note and mortgage," etc. In accordance therewith, a judgment and decree of foreclosure was entered upon the $880 note and mortgage, which judgment also declared the $500 note and mortgage null and void, and directing their cancellation.

The appellant contends that upon the evidence contained in the record he is entitled not only to the judgment for the full amount of the $880 note, with interest, which was awarded to him by the trial court and with which he is entirely satisfied, but that he is also entitled to a judgment and decree of foreclosure of the mortgage securing the $500 note, and for the full amount of said note with interest.

It is conceded that the plaintiff received a full cash consideration at the time of the execution and delivery of the $500 note, and it is further agreed that the consideration for the $880 note, was the sum of $380 paid to the plaintiff by McLaughlin at the time of its execution, in cash or its equivalent, and the agreement for the payment and cancellation of the $500 note. It is also agreed that the $500 thus provided by Prescott was not remitted by McLaughlin to Helen M. Andrews and the same has not been paid either to her or to the defendant by McLaughlin.

The respondent's position is that his total indebtedness is but $880, and interest thereon, which sum he concedes that he received from the two loans, and there is no claim that he received any further sum. It is not material to him whether this admitted indebtedness is held to be represented by one or both of these notes, so long as he is permitted to discharge his obligations and secure a satisfaction of the two mortgages upon his land by paying that sum.

As stated, the trial court reached the conclusion that the plaintiff's obligation, evidenced by the $500 or Andrews note, was extinguished by the $880 loan, and, as a necessary sequence to that conclusion found that there was no partial want of consideration for the $880 note, and gave judgment for the full amount of the same with interest. These conclusions are, in our opinion, entirely sound and the judgment appealed from must therefore be sustained and the conclusion that the plaintiff's obligation on the Andrews note was extinguished is not nec-

essarily dependent upon the alleged authority of McLaughlin to collect it. The conclusion cannot be escaped, we think, that the plaintiff's debt was extinguished as to the $500 note, whether McLaughlin is held to have acted with the authority of an agent in collecting it, or is held to have been without any original authority; and this for reasons which will be hereafter stated. The exact legal relation which existed between McLaughlin and Miss Andrews is not satisfactorily disclosed by the evidence. Neither of these parties were witnesses. McLaughlin became insolvent about January 1st, 1897, and was out of the country at the time of the trial. The defendant did not see fit to call Miss Andrews as a witness, or to introduce any documentary evidence touching the legal relation which existed between her and McLaughlin. It is a just presumption, under the circumstances of this case, that had such evidence been produced it would have been unfavorable to the defendant. 1 Greenl. Ev. § 195b. The case rests upon the evidence of Prescott, and certain documentary testimony introduced by him. The documentary evidence consists of fourteen letters received by Prescott from McLaughlin; two letters received by him from the defendant Brooks in 1897, and five letters received by him in 1897 from Fish & Cary, who, it is conceded were the agents of Miss Andrews, located at Milwaukee, Wisconsin; also all of the several coupon notes which were paid by Prescott on the two loans, and a number of renewal notes. The $500 note bears date December 2nd, 1887, and, by its terms, became due on December 1st, 1892. It bore eight per cent annual interest, which was represented by five coupons. Prescott paid to McLaughlin the coupon which fell due December 1st, 1888, and also the second coupon, which fell due December 1st, 1889, and received both of them from him duly canceled. These two coupons had been endorsed to Helen M. Andrews by McLaughlin and had thereafter been endorsed back to McLaughlin, so that upon their face they appeared, when paid and received by Prescott, to have been owned by McLaughlin. At the time of paying the second coupon, namely, December 9th, 1889, Prescott executed the $880 note and mortgage. This note by its terms, became due on December 9th, 1894. It bore eight per cent annual interest, which was represented by five coupons of $70.40 each. It is not disputed that this note was given to pay the $500 incumbrance

then upon the land, and the mortgage given to secure it was in form a first mortgage. At the time of this transaction and up to the time of the trial it appears that Prescott had not noticed the endorsement upon the two coupons which he had thus paid, neither did he have any actual notice of the transfer of the $500 note to Helen M. Andrews by McLaughlin, or of the recording of the assignment of the mortgage. It is apparent that he assumed that McLaughlin still owned the note, and, further, that it had been paid and extinguished and the mortgage released, as agreed by McLaughlin, and he continued in this belief without notice or knowledge to the contrary until January 30th, 1897, more than seven years after he had given the $880 note to McLaughlin for the purpose of extinguishing it. On February 9th, 1890, which was about two months after it was executed, McLaughlin sold and assigned the $880 note and mortgage to the defendant Brooks. It appears that at all times thereafter, and up to 1897, McLaughlin was the defendant's agent for the collection of the same. The evidence shows that Prescott paid to McLaughlin all of the coupons due on the last named or $880 loan, viz.: the coupons maturing in 1890, 1891, 1892, 1893 and 1894; and, further, that in 1894, through McLaughlin as agent for the defendant, a written extension agreement was entered into whereby the note was extended for a period of five years, and five new coupons were executed. One of these coupons was paid to McLaughlin, that is, the one which matured on December 9th, 1895. The letters written to Prescott by McLaughlin which are in evidence, are dated in 1894, 1895, 1896 and 1897, the last one bearing date January 22nd, 1897, and relate to the payment of the coupons, the extension of the loan and the statement of the amount due upon the $880 loan. In four of these letters, the mortgage is described as a first mortgage upon the premises, and in two of them a detailed statement of the amount of the incumbrances upon the land is given, after describing this mortgage as a first mortgage. The first information which Prescott had that the $500 note had not been canceled and the mortgage satisfied, as agreed by McLaughlin, was given by the following letter from Fish & Cary, under date of January 23rd, 1897: "Silas W. Prescott, Cavalier P. O., Pembina Co., N. D. Dear Sir:—I have for collection your note for $500, due Dec. 1, 1892, upon which no interest has been paid since

that date. This note is secured by mortgage on N. W. ¼ Sec. 27, T. 161 N. of R. 54. Do you expect to pay this note without suit? The note draws 12 per cent after due. The note runs to S. W. McLaughlin and he assures us that you intend to pay. Let us hear from you." Prescott replied to this letter, stating that he owed no such note, that he had given a $500 note, but the same had been paid by making a new loan of $880 from McLaughlin and that if the note they referred to was a part of this last loan it was all right, otherwise it was all wrong. He also immediately wrote to McLaughlin demanding an explanation, to which he received no reply. Under date of February 15th, 1897, Fish & Cary again wrote Prescott as follows: "The note and mortgage were transferred by McLaughlin to Helen M. Andrews and it is now owned by her and she placed the same in our hands for collection. The note and mortgage, with coupon attached, were in the possession of Mr. McLaughlin for collection. He has reported that he was about to collect the same from time to time, but last summer he turned all over to Miss Andrews, or to Fish & Cary for Miss Andrews, upon which there appeared to have been no interest paid since 1892. We would like to know if you still own the land and whether or not you are in a position to pay the interest and the principal due at this time. We are instructed to proceed to collect. . . ." Later, and on March 2nd, 1897, in replying to a further letter from Prescott, which called for further information, they stated: "We hope this information is full enough to satisfy your mind that we have the note and mortgage in our possession." On March 22nd, 1897, Fish & Cary sent the papers to Grand Forks, where McLaughlin resided and had his place of business, for collection, and, on the same day, wrote to the plaintiff, informing him of that fact, as follows: "We send this day by American Express to Grand Forks, N. D., for collection your note, . . . upon which there is now due $500, and interest from Dec. 1st, 1892, at 12 per cent, equaling $815. Also a mortgage deed, . . . also assignment of said mortgage to Miss Helen M. Andrews, . . . also satisfaction of mortgage executed by Helen M. Andrews, bearing date Nov. 23rd, 1892. We have been unable to obtain any reply from letters from Mr. McLaughlin about this claim. We have instructed the American Express Company to hold the papers for ten

days and to deliver all of them to you or to Mr. McLaughlin on payment of the amount due thereon. I have therefore informed Mr. McLaughlin that if he would pay the amount due on this note without delay, we would accept of the interest at 8 per cent per annum, to which he makes no reply whatever. We must therefore insist on the amount being paid according to the terms of the note, as my client has been put to expense in endeavoring to collect the same. Unless this is paid we shall institute proceedings for foreclosure at the earliest practical moment. I shall send a copy of this letter to Mr. McLaughlin and shall ask the Express Company to give you notice by sending you from Grand Forks an additional copy of this letter." Under date of March 31st, 1897, Fish & Cary, in reply to a letter from Prescott, wrote: "You have not paid any interest since 1892 and while Mr. McLaughlin twice stated early last summer that he was prepared to take up the mortgage and pay it and would do so in a few days, all at once he ceased to write and we can get no reply to our letters. We therefore send the note, mortgage and release forward for collection."

The evidence afforded by these letters, and no objection has been urged in this court to their consideration and no attempt was made by the defendant at the trial to contradict or explain their contents, when taken in connection with Prescott's testimony and the long and unexplained silence of Miss Andrews, establishes the fact that McLaughlin was the collection agent of Miss Andrews and that this relation commenced in the fall of 1888, prior to the payment of the first interest coupon, and continued until McLaughlin's insolvency became apparent in the summer of 1896, and that he had possession of the note and coupons and all papers connected with the loan prior to the time they were turned over to Fish & Cary in 1896. This is not an inference, but is established by direct evidence. As has been seen, the coupons due in 1888 and 1889 were in McLaughlin's hands for collection and were paid to him by Prescott and the canceled coupons delivered to the latter; further, Fish & Cary in their letter of February 15th, 1897, above quoted, expressly state that "the note and mortgage, with coupon attached, were in the possession of Mr. McLaughlin for collection," and they further state in the same letter: that in the summer of 1896 McLaughlin turned all papers over to Miss Andrews, or

to Fish & Cary for her. Among the papers so received by them from McLaughlin was a satisfaction of the mortgage in question, executed by Helen M. Andrews on November 23rd, 1892. It should require no argument to show, upon this state of the evidence, that Prescott's debt on this note has been extinguished. It is true, as counsel for defendant contends, the mere authority of a collecting agent does not authorize him to bind his principal by the receipt of anything as payment except cash; and it is also true that the ordinary authority of a collecting agent does not authorize him to accept payment of a note before it is due; and it is true in this case also, that McLaughlin did not receive cash directly from Prescott; and it is further true that the $500 note was not due when the $880 loan was made. But these facts are not decisive, for the reason that while Prescott did not pay the money directly into McLaughlin's hands, he nevertheless executed and delivered to him a note and mortgage for the express purpose of paying the $500 note; and within about two months thereafter McLaughlin converted the same into money, so that he had the funds in his possession with which to perform the obligation which he owed to Prescott to pay it. There is no direct evidence of any authority in McLaughlin to receive payment for Miss Andrews at this time. Such authority can be established, if at all, only by inference from other facts in the case. However that fact may be, it is not a vital one because it is unquestioned that McLaughlin had authority to collect the note when it became due on December 9th, 1892, and at all times thereafter, and, further that he had the papers in his possession, including a satisfaction of the mortgage. The funds required to pay the debt, as we have seen, had been provided and were in his hands as a result of the negotiation of the $880 note. They continued in his possession for it is conceded that it was not paid to Prescott by him and it was not paid to Miss Andrews. We cannot assume that it was embezzled by McLaughlin during this period, for the evidence introduced by the defendant clearly establishes that up to and including the year 1895, McLaughlin was not only solvent, but of high financial standing. Conceding then that McLaughlin had no authority to collect the note prior to its maturity, he had the authority when it became due, and the funds to pay the same were in his possession. He had authority to receive it and he was under

obligation to pay it. In such cases the law makes the application. This case is similar to those where a debtor places claims against other persons in the hands of his creditor or his collector, or agent, with the understanding that the money realized shall go to pay his debt. "If moneys sufficient are thus received they are *eo instanti* applied in extinguishment of the debt, precisely as if the debtor had paid the money, for he does thus pay the money as soon as it passes into the hands of the collecting agent and must be deemed to be thus applied." Grandy v. Abbott, 92 N. C. 33. Where the authority rests in one person to make payment and to receive payment, the possession of funds which ought to be applied to the debt, is, in law, an application. Ruffin v. Harrison, 81 N. C. 208, id., 86 N. C. 190. This result follows in this case because of McLaughlin's obligation to Prescott to pay the note, and his authority from Miss Andrews to receive payment; and this without regard to any knowledge on the part of Miss Andrews as to his use of the money or as to the manner in which the fund had been provided. The evidence, in our opinion, however, discloses that she did have such knowledge. The letter of Fish & Cary, dated March 31st, 1897, and above quoted, shows that she had treated McLaughlin as her debtor. During the entire time when demands were being made upon McLaughlin by her, no demands were made upon Prescott, and none were made upon him until McLaughlin became insolvent. The letter last referred to states: "McLaughlin twice stated early last summer (1896) that he was prepared to take up the mortgage and pay it and would do so in a few days. All at once he ceased to write and we can get no reply to our letters." Again, when Fish & Cary sent the notes for collection they were not sent to Cavalier, where Prescott resides, but to Grand Forks, McLaughlin's residence, and a letter was sent to the latter as well as Prescott demanding payment, and McLaughlin was given the privilege of paying the note with eight per cent interest, whereas the same drew twelve per cent and was amply secured. Aside from the obligations arising out of this $880 mortgage transaction, McLaughlin owed no obligation to Miss Andrews to pay the $500 note. He was neither endorser nor guarantor. He had transferred the note to her without recourse. Nevertheless, the evidence clearly shows

that she had been dealing with McLaughlin with reference to an obligation which he owed to her. The relation of debtor and creditor which these letters tend to show existed between them, could only have arisen and been thus acted upon by her because of her knowledge of the collection of the $500 note by McLaughlin, or through an express promise of McLaughlin and her assent thereto, that McLaughlin would be responsible for the payment of the $500 note and interest. Such an agreement, if in fact made, would amount to a novation or substitution of debtors, and of course, would extinguish Prescott's liability on the note. The fact that McLaughlin paid the coupons due in 1890, 1891 and 1892, as it is conceded he did, and the offer of Miss Andrews to accept from him the same rate of interest for the remaining five years, when the note drew twelve per cent after maturity, tends to show that such an agreement existed. Direct proof of the agreement is not necessary. It may properly be inferred from the facts and circumstances in evidence. Brown v. Kirk, 20 Mo. App. 534. But, for the purposes of this case, it is unimportant to discuss or consider this question further, for, as we have seen, the debt was extinguished in either event. If McLaughlin was her collecting agent, the note was paid and she has against him such rights and remedies as are available to a principal whose agent embezzles funds. If she accepted McLaughlin as her debtor, there was a novation and a release of Prescott, and she has only the rights and remedies of a contract creditor. It is sufficient for this case to say that by trusting McLaughlin either as an agent or as a contract debtor, she extinguished Prescott's obligation and cannot compel him to protect her against the results of her misplaced confidence in McLaughlin. The defendant, who purchased the note after maturity with full knowledge of the facts, stands in no better position than Miss Andrews.

Counsel for defendant strenuously contend that all inquiry into the question of the non-payment of the $500 note was foreclosed by a stipulation entered into by counsel for plaintiff and made of record, to the effect that the note was not paid. This is one of a large number of stipulations. The stipulation is inexplicable. It is certain, however, that plaintiff's counsel did not intend to confess judgment against his client on this note by this stipulation. The trial judge did not believe

he had any such purpose; neither had defendant's counsel. If that had been the purpose of the stipulation, this note would have been eliminated from the case, either by payment by the plaintiff or by the defendant's taking judgment upon his counterclaim on the note. It was also stipulated that "the case shall be tried on the facts stipulated and on such other facts as shall be proved by witnesses and documentary evidence in the case, and such judgment rendered as the facts warrant, regardless of the pleadings." The issue on the note was not withdrawn from the case and it is plain from the stipulation last referred to that the entire case was submitted to the trial judge for determination. Possibly the stipulation that the note was not paid was intended to mean that payment had not been made to Miss Andrews. But however it is viewed, we are clear that it is not controlling. Payment is usually a mixed question of law and fact. In this case the question is purely a question of law. The facts relating to the payment were submitted to the trial court and are in the record. The question as to whether they amounted to a payment was for the court to determine as a legal conclusion. Adams v. Helm, 55 Mo. 468; Frost v. Martin, 29 N. H. 306. The stipulation of counsel that it was not paid, was, at most, in this case, an agreement upon a legal conclusion and was properly disregarded by the court, to whom the case was submitted for judicial determination. Stipulations of counsel as to facts are binding, but we do not understand that it is within the province of counsel to substitute their judgment upon questions of law for that of the court, and thus bind the court to what, in this case we consider would have been an erroneous judgment.

For the reason stated the judgment of the district court will be in all things affirmed.

MORGAN, J., concurs.

WALLIN, Ch. J. (dissenting). In this case I am compelled to dissent from the views of the majority of the court upon the question of whether the note of Helen M. Andrews has ever been paid. The court holds that it has. I think it clearly appears from the record that it has not.

In support of my views I call attention first to certain allegations of the complaint. After setting out that the last note and mortgage were given upon an agreement made with McLaughlin that the first note and mortgage should be paid by the latter, the complaint, in paragraph numbered seven, proceeds as follows: "That said S. W. McLaughlin failed to pay the consideration agreed to be paid by him to said plaintiff for the execution and delivery of the last described note and mortgage, in this, that he failed to pay the said prior mortgage debt of five hundred dollars, or secure the release and cancellation of the said prior five hundred dollar mortgage on said lands securing said debt, and said McLaughlin concealed from said plaintiff this fact that he had not done this, and plaintiff remained ignorant of this failure until on or about the ...... day of ...... A. D. 1897, when he was called upon, through a letter sent by mail, to pay said prior mortgage and note of five hundred dollars with interest, when he learned for the first time there was then due, and is yet due and payable thereon, the sum of five hundred dollars with 12 per cent interest thereon per annum from December 1st, 1892." The prayer of the complaint reads: "Plaintiff prays that the court may take an accounting of the matters hereinbefore described, and determine the exact amount due said defendant, Helen M. Andrews, and direct this to be deducted from the amount which would otherwise be due to said defendant Brooks, and from such computation decree the amount to be due to said defendant Brooks; and permit said plaintiff to pay said amounts so to be found due into this court, and to have a decree from this court that on this being done said two mortgages shall, by its decree, be canceled and annulled, and that plaintiff may have such further and other relief in the premises as he is entitled to receive." The defendant Brooks, by his answer to the complaint, expressly alleged that the first note was paid at the time the second note was given. Plaintiff replied and denied such allegation.

Upon the issues so framed, the vital question of fact to be determined in the trial court was whether the Andrews note had or had not been paid. In my judgment, this question was one of pure fact and not in any sense a question of law and fact, or of law alone. When the case was called for trial and before any evidence was offered, counsel for the respective parties entered into a stipulation which was reduced

to writing and brought upon the record. The stipulation is as follows: "It is hereby stipulated between the parties that the following allegations of the plaintiff are true, that is, those contained in paragraphs one (1), two (2), three (3), four (4), five (5) and six (6) and also the allegations contained in paragraph seven (7) that the five hundred (500.00) dollar note has not been paid with interest thereon since December 1st, 1892. . . . It is further stipulated between the parties that the $500 note and mortgage at the time of the assignment thereof by Helen M. Andrews to George Brooks was a valid mortgage for $500 and could have been enforced against the land in question with such interest as could have been collected thereon, it being contended by the plaintiff that the consideration in the $880 mortgage, was, in part, that the said $500 mortgage should be satisfied by the mortgagee named in said mortgage; that whatever this $500 mortgage claim amounts to, is to be deducted from whatever amount is found due on the $880 mortgage. . . . It is further stipulated that, during the pendency of this action, the said Helen M. Andrews, on September 18, 1899, sold, transferred and assigned to the defendant George Brooks, said $500 note and mortgage, together with all the interest and taxes paid, and the tax certificates set out in the counterclaim of Helen M. Andrews." The only other stipulation in the case which needs to be noticed is that which is given, in part, in the majority opinion, and which is here quoted in full: "It is stipulated by and between counsel for the respective parties that no point shall be made on the pleadings in this case, but that the case shall be tried on the facts stipulated, and such other facts as shall be proven by witnesses and documentary evidence in the case and such judgment rendered as the facts warrant, regardless of the pleadings."

All of these stipulations are clear and explicit in their language and from my point of view they appear to have been made advisedly and with an intelligent understanding of their full import and effect. As I apprehend the case, there existed good reasons which impelled counsel for both sides to enter into the stipulations, which were made at the threshold of the trial and before any evidence was offered. Plaintiff's theory of his case, as developed by the complaint, was that the second note, which was non-negotiable and was the property of the defendant

Brooks, was without consideration except as to the amount actually paid over to the plaintiff by McLaughlin, at the time the second note was made and delivered; and the cornerstone of this theory was the fact as alleged in paragraph seven of the complaint, to the effect that while the note last given was a consideration on which McLaughlin agreed to pay the Andrews note and procure a cancellation of the mortgage given to secure the same, yet the Andrews note had not been paid in fact and therefore the second note, upon plaintiff's theory, failed for want of consideration except as to the amount actually received by plaintiff when he executed and delivered the second note. It was therefore vitally important in sustaining the complaint that the plaintiff should establish the foundation fact upon which his case rested, viz.: the fact that the Andrews note, except as to certain interest not in dispute, had never been paid. To establish this fact by competent evidence was, probably, somewhat difficult in view of the fact that McLaughlin had, after becoming insolvent, left the state and the further fact that Helen M. Andrews was also a non-resident and when the stipulation was made was no longer interested in the result of this litigation, she having sold and transferred her note and mortgage to the defendant Brooks after issue had been joined and before the trial commenced. Under the circumstances it was manifestly to the plaintiff's interest to definitely settle the question of payment and to accomplish this object the plaintiff's counsel made the stipulation. But the interests of the defendant Brooks likewise demanded that the question of the payment of the first mortgage should be settled in the negative. True, the answer of Brooks had put the plaintiff's allegation of non-payment in issue, but it seems that after joining issue Brooks and his attorneys had investigated the question of payment more carefully and when the case was called for trial had reached the conclusion that except as to certain interest, the Andrews note had not been paid in fact either by Prescott or by McLaughlin, or at all. This view of the question of payment, which I submit is the true view, was strongly reinforced, of course, by the verified complaint by which plaintiff, with full knowledge of the facts, had alleged in plain terms that the Andrews note had not been paid. Therefore to place the question beyond doubt or controversy the stipulation was made at the outset of the trial to the

effect that the Andrews' note had not been paid. Defendant Brooks and his attorneys, in entering into the stipulation as to payment, had vital interests to protect. Investigation had satisfied them that the plaintiff's averment of non-payment was true and that the fact would probably be established by the testimony offered in support of the complaint that the first note and mortgage were outstanding and unpaid obligations.

Under the circumstances, Brooks, as the holder of a second mortgage, deemed it to be very necessary for his protection to secure the prior lien and to do so he obtained a transfer of the Andrews' note and mortgage to himself, and Brooks has ever since been the holder and owner of the same. It is clear to my mind, at least, that both plaintiff and defendant, in entering into this stipulation were acting advisedly and as sensible men and were dealing in a practical way with a matter of fact and business, and that the theory entertained by the court below, and by a majority of this court, viz.: that in making such stipulation the parties were thinking only of payment as a mere legal conclusion, or were contemplating some abstract matter, is, in my opinion, fallacious and without substantial foundation in the record or in reason. If this preliminary stipulation of fact had been adhered to in the trial court, the question left for determination would have been whether the Brooks note could be recovered upon in accordance with its terms, or, on the other hand, whether it was open to the defense of partial failure of consideration, under the existing facts. In disregarding a stipulation which settles a material question of fact in issue, a court assumes a grave responsibility. A stipulated fact brings such fact upon the record and calls upon the court to apply the law to the fact. Such fact stands on a par with any fact alleged in a complaint and admitted by the answer thereto. True, courts in furtherance of justice, will vacate a stipulation entered into under a mistake, or when the same has been obtained by deceit or fraud; but this case involves neither mistake nor fraud, and, furthermore, the counsel who made the stipulation are men of exceptional learning and of great experience in the practice of the law. From my standpoint, I cannot see that even a tactical mistake was made by counsel when the stipulation was entered into. After

making it, the plaintiff still had the right in reserve to urge a partial failure of consideration as to the second note.

Adverting to the stipulation referred to in the majority opinion and which I have set out in full, I deem it necessary only to say that the same, which was made at a late stage of the trial, does not, in my judgment, either modify or purport to modify the stipulation made before any testimony was offered in the case. The last stipulation has two features: (1) The parties agreed to make "no point" on the pleadings. Counsel seem to have adhered to this agreement strictly. The pleadings are not attacked in any way and no question is raised based on the pleadings or as to the admission of evidence under the pleadings. (2) The second feature deals with the facts upon which the case was agreed to be tried and they are divided into two classes, viz.: (a) "Facts stipulated" and, (b) "such other facts as shall be proven by witnesses and documentary evidence in the case." To my mind it would be quite superfluous to argue that the last stipulation operated to destroy or modify the first much less to abrogate the same. On the contrary, it distinctly recognizes the probative force of the facts "stipulated" and declares that the case shall be decided on such facts, together with such other facts as are established by the evidence.

Turning to the evidence, meager as it is, I discover enough to satisfy my own mind, at least, that counsel were well advised and stipulated only the truth when they, in open court, agreed to put the fact on the record that the Andrews note had never been paid. The majority opinion concedes that the owner of the note, Helen M. Andrews, never received payment in fact, except certain interest payments which were sent to her by her collection agent, and for which she surrendered to her agent interest coupons and concerning which there is no dispute. But the majority hold, upon some theory which I fail to understand, that, in contemplation of law, the Helen M. Andrews' note was paid in some mysterious manner on account of an oral agreement made between plaintiff on the one side and McLaughlin on the other, at the time the second note and mortgage were given by plaintiff as mortgagor to McLaughlin as mortgagee. The agreement was oral to the effect that McLaughlin, in consideration of the execution and delivery to him of the last note and mortgage, agreed that he would pay the Andrews'

note and procure a cancellation of the mortgage securing the same. This agreement, it is conceded, was entered into without the knowledge or consent of Helen M. Andrews, and further, that McLaughlin has not complied with its terms by paying the principal sum due on the note to Helen M. Andrews. It appears that when the last three interest coupons matured they were sent by Helen M. Andrews to McLaughlin for collection and that he paid the same out of his own funds, but there is not a vestige of evidence that this fact was ever communicated to Helen M. Andrews. Much less is there evidence that she, in any way, ratified or knew of the oral agreement to pay her note, as made by McLaughlin. In what way could she do so? If she had, by chance, learned the fact that McLaughlin had agreed to pay her note at some time not stated, but presumably not before her note matured, I am unable to see how that fact could operate to her disadvantage. She had a note secured by a first mortgage and if any agreement was made without her consent or authority, between outside parties, to pay the note, how is it possible that such extraneous agreement could operate to defeat her vested rights as a creditor? But, as I have said, there is no evidence whatever that she knew of the outside agreement until long after her paper matured. But the majority of the court have classified the various transactions involved as a "novation." A novation is defined by §.3829, Revised Codes of 1899, as follows: "Novation is made: 1. By the substitution of a new obligation between the same parties with intent to extinguish the old obligation. · 2. By the substitution of a new debtor in place of the old one, with intent to release the latter; or, 3. By the substitution of a new creditor in place of the old one with intent to transfer the rights of the latter to the former."

Section 3830 is as follows: "Novation is made by contract and is subject to all the rules concerning contracts in general." Subdivisions One and Three may be excluded, as they are manifestly without application to the facts of this case. Nor, from my viewpoint, has there been any novation under subdivision 2, above set out. The theory fails because there is no evidence that Helen M. Andrews ever, at any time or in any manner, agreed orally or in writing, or at all, to release the plaintiff from the obligations evidenced by the first note and mortgage. The record contains not a scintilla of testimony looking in that

direction. McLaughlin had acted as her agent. He had collected her interest and when McLaughlin paid the coupons out of his personal funds, he suppressed the fact, or at least so far as appears, did not tell the fact to Helen M. Andrews. When the principal note fell due, she sent the same to her agent for collection; and with it a release of the mortgage. I discover in this only a transaction in the usual course of business and fail to see in it any novation. I fail especially to see any contract to release the plaintiff, nor do I see a single peg on which to hang the theory that she intended by any act or word of hers to accept McLaughlin as a new debtor. A novation is a contract. See § 3830, Revised Codes of 1899.

But the court apparently place greatest stress upon the postulate that plaintiff provided the fund with which to pay the Andrews' note and placed the fund in the hands of McLaughlin, and that, at that time, the latter was the collecting agent of Helen M. Andrews, and therefore she was bound by such payment or such delivery of the.fund. The court say: "The funds required to pay the debt, as we have seen, had been provided and were in his hands as a result of the negotiation of the $880 note.". To my mind, the case shows most clearly that plaintiff never provided a fund for the payment of the first note. It is conceded that he furnished no fund in cash. He did, for a sufficient consideration, paid by him, enter into a contract with McLaughlin, whereby the latter agreed to pay the first note and procure a cancellation of the mortgage securing the same. This agreement, from its nature, the note having been sold, could not be carried out by McLaughlin until the paper matured. The wording of the complaint shows and the conceded facts show that plaintiff did not suppose that McLaughlin would release the mortgage and surrender the note then and there when the oral agreement was made. McLaughlin agreed to pay the note in future. Plaintiff did not then demand the Andrews note, nor did he demand a release of the mortgage securing it. In fact the plaintiff, as the complaint shows, fully relying on McLaughlin's promise, never learned until 1897, which date was about five years after the Andrews note matured, that McLaughlin had failed to pay the note and procure a release of the mortgage. The $880 note was, by its terms, payable to McLaughlin, or to his order, and he was named

as mortgagee in the mortgage given to secure the same. By every principle of law, therefore, McLaughlin was the owner of said note and in no sense did he hold the same in trust for the use of Helen M. Andrews. It follows that when the note was sold, the proceeds thereof was the property of McLaughlin. Besides, there is no evidence in the case that at the date of the sale McLaughlin was the agent of Helen M. Andrews. At that time, two coupon notes had been sent to McLaughlin for collection and on presentation to the plaintiff the interest due had been paid over to McLaughlin, who accounted for the collections. But, at the time of the sale of the $880 note, these transactions were closed and the law will not, in such case, presume a continuation of the agency. There was nothing at that time which prevented Helen M. Andrews from selling her paper or from employing some other collecting agent, or from collecting the same herself when it fell due. On what principle, then, can it be assumed that when McLaughlin sold his $880 note, he was the agent of Helen M. Andrews? Besides, there is no evidence that Helen M. Andrews knew either of the existence of the $880 note or of the agreement that was made when it was given, or of the fact of the sale of the same by McLaughlin. There certainly can be no presumption that McLaughlin could, at the time of the sale of the $880 note, compel Helen M. Andrews to accept payment of her claims against the plaintiff. Under such conditions, I am at a loss to understand how the plaintiff can be said to have provided a fund out of which McLaughlin was bound to pay the claim of Helen M. Andrews, or a fund from which the latter could demand payment. The plain fact is that McLaughlin agreed, without authority from Andrews, to pay the Andrews note, and, in consideration for such agreement, received a note of $880 from plaintiff. There is no evidence that McLaughlin agreed at any time to sell the last note and from its proceeds pay the first note; and when he sold the last note I submit that the law will presume, in the absence of evidence to the contrary, that McLaughlin could not have paid the Andrews note, the same not being then due in whole or in part. How, then, is it possible, under these facts, to spell out the theory that plaintiff provided a fund which McLaughlin was obliged to turn over to Helen M. Andrews? There is in the case no evidence whatever that plaintiff ever considered the $880 note a fund

in any sense. He had given the note and had accepted the payee's oral agreement to pay the Andrews note, but plaintiff's testimony contains no allusion to any trust fund, nor does the complaint refer to any trust fund.

I therefore respectfully protest against any disposition of this case which wipes out the vested rights and the property of the defendant Brooks. He purchased the Andrews note upon the faith of the sworn allegations of the complaint, stating that the same had not been paid, and the fact of non-payment was later confessed by plaintiff's counsel and brought upon the record in open court and in the most deliberate manner. Moreover, under the evidence, the fact of non-payment was truly alleged in the complaint and truly declared by the stipulations. The Andrews note has never been paid at any time or in any manner.

(On Petition for Rehearing.)

Young, J. The appellant asks for a rehearing. His petition, following its language, "states as grounds therefor:

(1) that the court in the majority opinion misconstrued the record.

(2) and the court has failed to consider questions decisive of the case, and

(3) has ignored the fact that appellant on the basis of a solemn stipulation made by the respondent on the trial has refrained from taking evidence which would successfully overthrow all the inferences drawn by the court from the silence of the record, and that it is highly unjust to permit a party to be entrapped by a stipulation as to facts so that he refrained from offering evidence on the point and then throw suspicion upon his case because such evidence was not produced."

The above statement of grounds is supplemented by thirty type-written pages devoted to argument and, in part, to assertions of fact not pertinent because not of record.

The first of the above grounds, we conclude from the argument annexed to the petition, relates to our construction of the appellant's demand for a retrial. As stated in the majority opinion, the statute provides for but two kinds of specifications, one for retrial of the entire case, and the other for a retrial of particular facts.

It is apparent, we think, upon the bare inspection of his demand for a retrial, that the appellant has not pointed out any particular facts for review; and that it is only by rejecting as surplusage the additional language in the specification that it can be sustained at all. On this point the court was unanimous in its conclusion, and that conclusion remains unshaken by the petition.

The second ground, viz.: that the court has failed to consider questions decisive of the case, refers to certain language contained in the stipulation, which the petitioner contends clearly establishes his construction of the stipulation, to-wit: that it was, in effect, an acknowledgment by the plaintiff, in open court, that he owed the $500 note, with interest thereon from December 1, 1892. The particular portions of the stipulations to which our attention is called will be found in the dissenting opinion of Chief Justice Wallin. The majority of the court examined the record in its entirety, including the pleadings, stipulations and the evidence, before reaching and announcing its conclusion that the question of the defendant's liability upon this note was in issue for determination, and we are not now able to see how any other conclusion can be reached upon the record.

The plaintiff, after alleging the execution and delivery of the $500 note and the mortgage securing it, alleged in paragraph 6 that on the 9th day of December, 1889, he made "with said S. W. McLaughlin a new loan of $880 to be applied to the cancelation of the aforesaid mortgage by said McLaughlin." . . . Paragraph 7 alleges "that said S. W. McLaughlin failed to pay the consideration agreed to be paid by him to said plaintiff for the execution and delivery of the last described note, in this, that he failed to pay said prior mortgage debt of $500, or secure the release and cancelation of the said prior $500 mortgage" . . .

It is entirely plain that the pleader did not intend to admit his liability on the $500 note, or that the legal effect of the giving of the $880 note was not to discharge the prior note. It is clear that the allegations of non-payment refer to non-payment by McLaughlin and not by the plaintiff. The sole and only purpose of making Miss Andrews a party to the action was to have the question of plaintiff's liability on the note then owned by her judicially determined. That the question of his

liability on said note was in issue under the pleadings thus framed is not disputed. Chief Justice Wallin, in his dissenting opinion, agrees that "Upon the issues so framed the vital question of fact to be determined in the trial court was whether the Andrews note had or had not been paid." The correctness of this last statement would be readily admitted if it were modified by the further statement that the fact that McLaughlin did not pay the money to Miss Andrews has never been in issue, either in the pleadings or under the evidence, and that the only, issue was whether the execution and delivery of the $880 note and mortgage under the facts alleged and proved amounted in law to payment.

But whether the question be considered as one of fact or of law it is agreed that the question of the plaintiff's liability was in issue under the pleadings. The stipulation in question was entered into after the case was called, and is an admission, among other things, of the truth of the allegations of paragraph 6, and that portion of paragraph 7 both above quoted.

Now, as we have seen, these allegations in the pleadings were considered and treated as forming an issue as to plaintiff's liability on the $500 note. Just why any other meaning should be given to the same language when incorporated in the stipulation, we are unable to understand. In referring to this stipulation, in the majority opinion, we said: "It is certain that plaintiff's counsel did not intend to confess judgment against his client on this note by this stipulation; the trial judge did not believe he had any such purpose, neither did defendant's counsel."

The accuracy of the foregoing statement is vigorously denied by counsel for petitioner. The record, however, upon which our conclusion is based, does not sustain his denial. It appears from the abstract that immediately after entering into the stipulation, the plaintiff was called as a witness on his own behalf, and examined by his counsel in reference to the $500 note. Plaintiff's counsel also introduced a number of exhibits, including the two interest coupons paid by him, also the letters from Fish & Cary referred to in the majority opinion, which could have no possible relevancy upon any other issue than that of the plaintiff's liability upon this note. The record also shows that the trial judge, with the stipulation then fresh in his mind, examined this

witness with the evident purpose of eliciting a more accurate statement from plaintiff of the agreement made by McLaughlin through Abrams as to discharging the $500 note. The following questions were asked by the court:

"Q. I want you to repeat again just what was said, as nearly as you can remember, between you and Abrams in 1889, when you made this application for $300 (referring to the $880 loan)?

"Q. You at that time had no knowledge that it (the $500 note) had been assigned, or did you think of the matter at all?

"Q. Why didn't you at that time call for your note (the $500 note)? or a satisfaction of the mortgage?

"Q. Nothing said about returning it (the $500 note) to you at all?"

The record also shows that counsel for defendant cross examined this witness at great length, a large portion of it being directed to the elicitation of facts important only in determining the plaintiff's liability on the note in question. Among other questions asked were the following:

"Q. What arrangement was made at that time about the payment of the $500 note and mortgage; anything said about that?

"Q. Can you give the substance of the conversation that you had with Mr. Abrams on that subject; what you both said about that part of it?

"Q. You expected them to take care of it?

"Q. You knew the $500 note was not due, did you not?

"Q. You knew he could sell it if he wanted to, didn't you?

"Q. Then you left it for Mr. Abrams and McLaughlin to take care of and satisfy the $500 note and mortgage?

"Q. How was it you never made any effort to find out whether they had paid it or not?"

Again, when this witness was testifying in direct examination, in reference to the letters received from Fish & Cary, and they were being offered in evidence, the record shows the following stipulation by defendant's counsel: "The defendant concedes that there is no point made on the fact that the letters were written by John T. Fish, of Milwaukee, that at the time the letters were written, said Fish represented Fish & Cary in regard to this claim." It will be noted that

Fish & Cary in their agency and correspondence were connected only with the $500 note, and that "this claim" as to which evidence was being introduced was the $500 note.

It is proper to ask why the plaintiff introduced this testimony? Why the court intervened and examined this witness upon this question, and why counsel for defendant cross examined upon it, if the question of plaintiff's liability had just been intentionally and conclusively admitted by the stipulation as counsel for petitioner so strenuously insists in this court? It is apparent that the testimony referred to had no relevancy upon any other issue.

In addition to the foregoing, we have the stubborn fact that the district judge, who tried the case, and heard the stipulation and the subsequent arguments of counsel upon the merits, entered judgment canceling this note, which, if the present contention of counsel for petitioner be correct, the parties had stipulated in his presence represented a legal obligation upon which the plaintiff was absolutely liable.

The facts disclosed by the record may be misleading, and counsel's assertion of facts not of record may be true. The only safe and proper course, however, in determining cases is to determine them upon the record, and upon this record we can but conclude that the construction of this stipulation for which the petitioner contends in this court is not within the intention of the parties when it was entered into in the district court. It need hardly be said that a stipulation of fact deliberately entered into is binding, but it is equally true that a stipulation should not mean one thing in the district court, and an entirely different thing in this court upon a retrial.

The principles by which we must be governed in construing this stipulation are well stated in 20 Enc. Pl. & Pr. pp. 658–660, as follows:

"The entire stipulation is to be considered and not an isolated part thereof. . . . It is to be interpreted with reference to the subject matter and is to be read and construed in the light of surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties in respect to the issues. . . . The construction which the parties have by their use placed upon an ambiguous stipulation is entitled to great, if not controlling, weight . . . and an appellate court is strongly inclined to adopt the construction

placed upon a doubtful stipulation by the trial court." In urging us to adopt his construction, counsel for petitioner instead of asking us to consider the stipulation as a whole, asks us to give effect to only a portion thereof, and to utterly disregard the construction placed upon it at the trial by the parties themselves, and to utterly ignore the construction placed upon it by the trial judge. Such a flagrant violation of settled rules of construction finds no favor with the majority of this court.

Neither is the third proposition advanced by petitioner as a ground for a rehearing, viz.: that in reliance upon the stipulation he refrained from taking and producing evidence upon this question, sustained by the record. As already stated, it is agreed that the question as to the plaintiff's liability upon the $500 note was in issue under the pleadings. The record shows that the stipulation in question was not made until after the trial of the case was entered upon. It is not possible, therefore, that the defendant was prevented or induced to refrain from taking testimony by this stipulation, for the very ample reason that it was not made until after the trial commenced.

We may say in conclusion that we do not agree with counsel that "both morally and equitably Brooks ought to recover and Prescott ought to pay." Our duty is of course confined to determining the question of the plaintiff's legal liability, but in this case, in our opinion, the plaintiff's legal liability corresponds with the equities of the case. The defendant now has judgment for the full amount of his $880 note, and that represents the entire sum received by plaintiff from McLaughlin upon both notes. Pending this action to determine the amount of plaintiff's debt, and with full knowledge of the facts, defendant purchased the $500 note, and this after alleging in his answer that it had been paid in the manner and form as found by the trial court, and by the majority of this court, to-wit: by the subsequent giving of the $880 note and mortgage. He purchased it at his peril. Under these circumstances it is not inequitable, we think, that a court of justice should deny him a recovery upon a note which he had thus solemnly averred was paid.

No other grounds than those referred to are advanced. The petition, therefore, will be denied.

MORGAN, J. concurs.