CECIL A. LYON *et al.*, *as Receivers, etc.*, v. THE ROBERT GARRETT LUMBER COMPANY.

No. 15,201.   (92 Pac. 589.)

STIPULATION AS TO FACTS—*Estoppel—Case Tried on a Different Theory.* It was said that a stipulation as to facts binds the parties, unless it appears from the manner in which the case was tried that the stipulation was ignored; and the stipulation should not necessarily bind the parties as to conclusions of law embraced therein.

Error from Leavenworth district court; JAMES H. GILLPATRICK, judge. Opinion filed November 9, 1907. Reversed.

*F. B. Dawes,* and *C. P. Rutherford,* for plaintiffs in error.

*John H. Atwood,* and *William W. Hooper,* for defendant in error.

*Per Curiam:* This is an action by the receivers of the Kirby Lumber Company to recover a balance claimed to be due for lumber sold to the Robert Garrett Lumber Company. The trial was by the court, and a judgment was rendered for the defendant. Plaintiffs bring error.

Defendant is engaged in the lumber business at Leavenworth, and, in January, 1904, made a contract to furnish to the Atchison, Topeka & Santa Fe Railway Company certain lumber to be used in the erection of a building at Topeka. The railroad company was to transport free all material hauled over "the Santa Fe, proper," designating Chicago, Ill., and Purcell, I. T., as the terminal points of the Santa Fe proper. Before the contract with the railroad company was closed defendant procured prices on the lumber from various wholesale lumber dealers, and on December 23, 1903, received a list of prices from Mr. Mucke, agent of the Kirby Lumber Company. Again, on December 30, 1903, the president and general manager of the Robert Garrett Lumber Company met Mr. Mucke in Kansas City and he gave them another set of prices. In the same interview some discussion arose as to the location of the mills of the Kirby Lumber Company. Mr. Mucke stated that they were on the Santa Fe at Call, Tex. At the request of the Robert Garrett Lumber Company he wrote at the bottom of the offer at which the Kirby company would furnish the lumber the words, "f. o. b. mill, Santa Fe, proper." The officers of defendant informed him that until they closed their contract with the railroad company they could do nothing further, but would let him know. He ceased to be in the employ of the Kirby company after January 1, 1904. On January 12 the Kirby company, having in its possession the statement of prices furnished by Mr. Mucke on December 23, but knowing nothing

of any other figures, wrote the Robert Garrett company as follows:

"We understand that you are in the market for a considerable bill of yellow pine and that Mr. Mucke, who was formerly in our employ, made you prices on same. We would be very glad indeed if you would favor us with this bill, as we are quite sure that we are in a position to give you as good service as any one in the business. Would be pleased to hear from you."

On January 15 defendant replied as follows:

"Referring to your favor of the 12th inst., will say that some days ago Mr. Mucke gave us the enclosed prices on the lumber bill which you speak of. We were not aware that he is not now in your employ and sent him an acceptance of his offer which we see has not reached you. You may begin shipping the timbers and joists first, and follow immediately with the balance of the bill. Kindly rush this through for us as we are now ready for a part of the stock."

Four days later defendant wired, as follows:

"*Kirby Lbr. Co., Houston, Tex.:*
"Wire if you accept Topeka order now ready for stock.          ROBERT GARRETT LUMBER COMPANY."

On the same day the Kirby company replied by wire, as follows: "Topeka order accepted and entered at our quotation through Mucke." This was followed by a letter of same date from the Kirby company, as follows:

"We have just wired you as follows and now confirm—'Topeka order accepted and entered at our quotation through Mucke.' We have already mailed you carbon copy of our entry of your Topeka order showing prices at which we will bill you. These prices are per Mr. Mucke's quotations to you and we cannot consistently go any lower. If unsatisfactory do not fail to wire in time to prevent our making any shipment."

On January 22, the contract, if it was a contract at all, was closed by the following telegram:

"LEAVENWORTH, KAN., January 22, 1904.
"*Kirby Lumber Company, Houston:*
"We accept Mucke prices, wire immediately when you will begin shipping.
                ROBERT GARRETT LUMBER COMPANY."

The Kirby company then began shipping, and within the next sixty days furnished defendant nineteen cars of lumber, sending with each shipment a bill of lading which on its face stated that the shipment was "f. o. b. mill." Defendant paid the freight, claiming afterward that this was merely an advancement on the purchase-price, and from time to time remitted payments to be aplied on the account. After the lumber had all been received defendant refused to pay the balance, deducting from the price the amount of freight from Call, Tex., to Purcell, I. T., which was $1413, the amount involved in this action. There was a stipulation as to some of the facts which reads as follows:

"That on December 30, 1903, A. G. Mucke, who was then and there the duly authorized agent of the Kirby Lumber Company, agreed with the Robert Garrett Lumber Company to furnish certain lumber at certain prices therein specified, and upon certain terms stated in said agreement, a copy of which is hereto attached, marked 'Exhibit A,' and made a part hereof. And that afterward, on or about January 15, the Kirby Lumber Company accepted said order and agreed to deliver said lumber in accordance therewith."

It is vigorously contended here by counsel for defendant that this stipulation settles for all time what the contract was, and this must have been the conclusion of the court. But this case was tried upon a different theory and as though this stipulation had not been made. Evidence was given without the slightest objection which established beyond any question that no contract or agreement was entered into at the time stated in the stipulation, if at all. It was practically conceded on the trial that if a contract was made it

was made by the correspondence between the parties. This was not closed until January 22. No agreement was made on December 30, for the reason that, as stated by the president of the defendant company, the contract with the railway company had not been closed. Whether any contract was made based upon the offer of December 30 depends upon whether the minds of the parties met. The facts with reference to the correspondence are not disputed; the conclusions to be drawn therefrom are. A stipulation of mere facts binds the parties unless it appears from the manner in which the case was tried that the stipulation was ignored; and the stipulation should not necessarily bind the parties as to conclusions of law embraced therein.

If it could be said that there is any evidence in the record to support a finding that the minds of the parties met on January 22, or at any other time, and a contract was the result, then there remained only the question of how the contract was to be construed; and the general finding of the court would be conclusive upon that question, and the inquiry as to the construction placed upon the stipulation by the court would be of no importance. But there is no such evidence. Defendant had in mind one thing, the Kirby company another. The latter was not even aware that defendant relied upon the prices given by Mr. Mucke on December 30 until after the lumber was furnished, and never had its attention called to the claim that it was to pay the freight to Purcell until it asked for settlement. It is difficult to believe that the Kirby company could have intended to sell lumber which the undisputed evidence shows was worth on the market $13 per thousand and accept $7 per thousand for it. But that is what it must have intended if a contract such as defendant claims was in fact made.

The mills of the Kirby company at Call, Tex., are on what is known in Texas everywhere as the Santa Fe. It is a part of the Santa Fe system, though technically the Gulf, Colorado & Santa Fe. Mr. Mucke testified

that he never knew until this point arose that the Santa Fe proper ended at Purcell.

It is difficult to determine just what force was given by the court to the quoted portion of the stipulation of facts, but from the vigor with which its conclusiveness is urged upon us it is possible it was considered controlling, notwithstanding the construction placed thereon by the parties themselves at the trial. The stipulation is partly fact and partly law, and the conclusion to be drawn from the facts as they existed was one of the main things to be determined as the case was in fact tried. In view of its rather ambiguous wording, and the theory upon which the case was tried, the Kirby company should not be concluded by it. The judgment is therefore reversed and the cause remanded for another trial.