## P. S. JENSEN v. NORTHWESTERN UNDERWRITERS ASSO-CIATION, a Corporation.

(159 N. W. 611.)

**Complaint — action — cause of — stating — contract — land purchase — corporate stock.**

1. Complaint examined, and *held* to state a cause of action on a contract of the defendant to purchase land, and not of the plaintiff to purchase corporate stock.

**Counterclaim — cause of action — defense.**

2. Counterclaim examined, and *held* not to state a cause of action or defense.

**Counsel — stipulation of — legal opinion — courts — not binding on.**

3. A stipulation by counsel that, "if the plaintiff should recover, the defendant is entitled to be credited with the amount of the counterclaims set up in the answer," is held, under the facts of the case, to be merely the expression of a legal opinion or conclusion, and to be not binding upon either the trial or the appellate court.

**Corporate stock — forfeiture — by-laws — special provisions — charter — directors — cannot delegate powers.**

4. A forfeiture of corporate stock must, in the absence of a by-law to the contrary or a special provision in the charter, be declared by duly elected

Note.—The forfeiture of corporate stock is discussed in a note in 27 L.R.A. 305, and cases will be found therein discussing the power to forfeit, holding that the right to forfeit must come from the law and can be exercised only in the manner prescribed by law, the validity of the exercise of the power, redemption by the stockholder, and the effect of forfeiture on his personal liability.

directors and by the number required to conduct corporate business, and such directors cannot delegate their powers and duties in the premises.

**Corporate stock — forfeiture — power to declare — nonpayment — charter — statutory requirements.**

5. The power to declare the forfeiture of corporate stock for nonpayment of the amount due thereon must be exercised in strict compliance with the charter or statutory requirements.

**Cross claims — interest — how computed — balance.**

6. Interest is calculated on the balance of two cross claims from the date when both become due.

Action to recover on the contract for the sale and transfer of land.

Appeal from the District Court of Grand Forks County. *Charles M. Cooley, J.*

Judgment for Plaintiff. Defendant appeals.

Affirmed.

Statement of facts by BRUCE, J.

This is an appeal from an order denying the motion of the defendant for a new trial or for judgment notwithstanding the verdict. This opinion is written after a rehearing.

The complaint alleges:

### 1.

That the defendant is a corporation organized under the laws of the state of North Dakota.

### 2.

That heretofore and in the fall of 1912, plaintiff purchased of defendant seventy-five allotments of stock, each allotment consisting of one share of plaintiff's capital stock and one share of the capital stock of the Northern Fire & Marine Insurance Company, at the agreed price of $28 per allotment, or a total of $2,100. It being then and there agreed that the same should be paid for only as sold by plaintiff to other purchasers, that plaintiff should account to defendant for the sum of $28 for each allotment so sold, either in the form of cash or other settlement taken from such purchaser acceptable to defendant.

### 3.

That under the aforesaid agreement during the month of February, 1913, plaintiff sold thirty-eight allotments of said stock, of the value of $1,900, at the agreed price of $50 per share for a total sum of $1,900. Settlement being taken therefor in the form of farm lands, and that said entire settlement was turned over and accepted by the defendant, with the agreement and understanding that defendant should account in cash to plaintiff for the difference over and above the price plaintiff had agreed to pay to defendant for the said stock, which said excess amounted to the sum of $836:

### 4.

That the said sum of $836 so due from defendant to plaintiff, though duly demanded, has not been paid nor has any part thereof.

Wherefore, plaintiff demands judgment in his favor and against the defendant for the sum of $836, with interest thereon from the 1st day of March A. D. 1913, together with the costs and disbursements of this action.

The amended answer is as follows:

### 1.

The said defendant admits paragraph 1 of the said complaint.

### 2.

The said defendant admits that in the fall of 1912 the said plaintiff purchased of the said defendant seventy-five allotments of stock, each allotment consisting of one share of defendant's capital stock and one share of the capital stock of the Northern Fire and Marine Insurance Company, at the agreed price of $28, per allotment, or a total of twenty-one hundred and no-100 ($2,100) dollars, and alleges in respect thereto that the said plaintiff gave his promissory note to the said defendant for the said sum of twenty-one hundred and no-100 ($2,100) dollars, whereby he promised to pay the said sum on demand to the said defendant. That the said plaintiff has not paid said note nor any part thereof, excepting the sum of *seven hundred twenty-eight dollars;* that by reason of the nonpayment of said note and the balance due thereon, the said stock so purchased was duly canceled for nonpayment.

### 3.

For and as a counterclaim herein the said defendant re-alleges the matters set forth in paragraph 2 of the answer, and specifically alleges that on or about the 11th day of November, 1912, at Grand Forks, North Dakota, the said plaintiff gave, executed, and delivered his promissory note to the said defendant for the sum of twenty-one hundred dollars ($2,100), whereby he promised to pay to the order of the said defendant such sum on demand; that no part thereof has ever been paid, except $728.

On or before the commencement of this action the said stock, for which said note was given, was duly canceled for the nonpayment of the balance, excepting allotments of stock duly issued pursuant to the order of said plaintiff.

The answer then pleads several counterclaims on various promissory notes, amounting in all to $315, and then ends with the prayer: "Wherefore, the said defendant prays for dismissal of said plaintiff's action, and that the said defendant have judgment against the said plaintiff for the sum of three hundred and fifteen and no-100 ($315) dollars, with interest on each respective note as hereinbefore alleged in the complaint, together with its costs and disbursements herein."

To this answer the following reply was filed:

"Now comes the plaintiff, and for his reply to the counterclaim of defendant.

### I.

Denies each and every allegation, matter, and thing alleged or set forth in paragraphs 1 and 3 of defendant's answer herein, except as is hereinafter admitted, qualified or otherwise answered.

### II.

Plaintiff admits the giving of the promissory note for $2,100 to defendants at or about the time of the purchase of the stock as alleged in the complaint, but alleges that the same was given without any consideration whatsoever other than that the same might appear on the books and among the assets of the defendant, for the purpose of constituting an apparent offset for the transfer of said stock, but that the

said note was not given in payment for or in consideration of the purchase of said stock, it being agreed and understood by and between plaintiff and defendant at the time of the said purchase that the stock should be retained in the possession of the defendant until sold by plaintiff, and that settlements for such stock so sold by plaintiff should be turned in to defendant, to apply upon the purchase price due from plaintiff to defendant for said stock, in manner as alleged in paragraph 2 of the complaint.

### III.

That said seventy-five allotments of stock have been paid for in full, with the exception of ten allotments, which have not yet been sold by the plaintiff, and which still remain in the possession of the defendant, subject to the condition of the original agreement as hereinabove and in the complaint set forth.

Wherefore, plaintiff demands that defendant take nothing in this action, but that plaintiff be given judgment as demanded in the complaint.

The jury returned a verdict against the defendant and appellant for the sum of $592.87, which, after the allowance of interest, was the amount sued for by the plaintiff ($836), less the amount of the several notes counterclaimed ($315), and the liability for which was admitted by the plaintiff.

*H. A. Bronson,* for appellant.

A party cannot be permitted to establish written agreements covering the entire subject-matter of the litigation in detail, and then proceed to prove parol contemporaneous agreements to set aside such valid written agreements; nor can such agreements be set aside or overcome by proof of a custom indulged in by plaintiff.   Comp. Laws 1913, § 5889; Gile v. Interstate Motor Car Co. 27 N. D. 126, L.R.A.1915B, 109, 145 N. W. 732; 21 Am. & Eng. Enc. Law, 1089; 11 Am. & Eng. Enc. Law, 489; 27 Cyc. 867; Richards v. Killam, 10 Mass. 239, 6 Am. Dec. 119; Clark v. Sherman, 5 Wash. 681, 32 Pac. 771; 4 Wigmore, Ev. §§ 24, 25 p. 3409; Lowe v. Jensen, 22 N. D. 148, 132 N. W. 661; Yancey v. Boyce, 28 N. D. 187, 148 N. W. 539, Ann. Cas. 1916E, 258; Tharp v. Blew, 23 N. D. 3, 135 N. W. 659.

The written evidence of indebtedness is the note; and applying principles analogous concerning mortgages, when a note and mortgage conflict in their terms, the note controls. 27 Cyc. 1058; Graham v. Fitts, 53 Fla. 1046, 43 So. 512, 13 Ann. Cas. 151; Muzzy v. Knight, 8 Kan. 456; Meyer v. Graeber, 19 Kan. 165; 2 Jones, Mortg. § 1179a.

Where a contract refers to another instrument as a part of itself, the terms of such instrument are incorporated in the contract. Moore v. Ramsey County, 104 Minn. 30, 115 N. W. 750.

The subscriptions for stock and the note given by the plaintiff were valid and binding obligations, and could not be fictitious subscriptions. Comp. Laws 1913, § 10,003.

Inconsistent defenses may be pleaded, and where no motion was made on the trial, either to strike out or to compel an election, all objections are waived. 31 Cyc. 225; J. H. Clark Co. v. Rice, 127 Wis. 451, 106 N. W. 231, 7 Ann. Cas. 505.

The facts alleged, and not the relief demanded, determine the nature and quantity of relief to be granted. 31 Cyc. 111.

In such cases, the procedure which permits a forfeiture of corporate stock is definitely outlined and requires definite steps to be taken by the board of directors, at a properly called meeting, with notice to the stockholder.

But, the situation here presented is more in the nature of a rescission and cancelation of a contract, for nonperformance. 10 Cyc. 499, 935, 943; 26 Am. & Eng. Enc. Law, 2d ed. 929; Comp. Laws 1913, §§ 4526, 4529, 4843.

There was only one issue in this case on the trial, and that was whether or not plaintiff, by a preponderance of the evidence, had established his express contract. The plaintiff had alleged an express contract; the defendant had denied this, and had pleaded certain facts by way of explanation, and in a negative manner.

The burden of proof still remained upon plaintiff throughout the case. The court, by its charge, created two issues, and placed an undue burden upon defendant, before the jury. 38 Cyc. 1751; Wall v. Hill, 1 B. Mon. 290, 36 Am. Dec. 578.

"Where plaintiff sues upon a demand bearing interest and defendant pleads a discount not bearing interest, plaintiff is entitled to calculate interest on his whole demand up to the time of the verdict;

conversely, where the plaintiff's demand does not bear interest, and the defendant pleads a demand drawing interest, the jury must give interest on the set-off at the time the verdict is rendered in the action, and reduce the plaintiff's demand by the amount of the set-off and interest." 34 Cyc. 758; Russell v. Rogers, 1 Nott & M'C. 24; Morse v. Ellerbe, 4 Rich. L. 600.

The fact that the defendant in the amended answer pleaded the cancelation of said note and stock certificate does not in any sense amount to an admission or tend to prove an admission. Abbott, Trial Brief, § 8910; 1 Thomp. Trials, 2d ed. § 1007.

Plaintiff cannot be permitted to prove an implied contract, based upon his custom of doing business in other transactions, or any oral arrangement made at the time of entering into the written contract, to offset, change, or contradict the terms of such written contract. Comp. Laws 1913, § 5889; Gile v. Interstate Motor.Car Co. 27 N. D. 126, L.R.A.1915B, 109, 145 N. W. 732.

*W. J. Mayer,* for respondent.

The answer does not state a cause of action or defense, even though the pleading bears the marks of a counterclaim. But plaintiff has replied that the note was given without consideration,—a charge that is admitted by the motion for judgment on the pleadings. Storey v. Murphy, 9 N. D. 115, 81 N. W. 23.

There was never any intention of counsel to stipulate that defendant might recover upon the note, and at most the stipulation is a mere assumption or conclusion, or opinion as to the law, and is not binding either upon counsel or the court. Prescott v. Brooks, 11 N. D. 93, 90 N. W. 129.

"When a corporation is authorized by the terms of subscription or otherwise, to forfeit stock for nonpayment, it may either forfeit the stock or recover the amount of the subscription; but it cannot do both." Comp. Laws 1913, § 4526.

"The general power to do any act or to make any contract is in the board of directors." 21 Am. & Eng. Enc. Law, 2d ed. p. 503.

"The duties of the secretary are to keep the corporation records and to carry into operation the votes of the directors." 21 Am. & Eng. Enc. Law, 2d ed. p. 561; 26 Am. & Eng. Enc. Law, 2d ed. p. 929.

"The power to declare a forfeiture of a share for nonpayment of the

amount due thereon must be exercised in strict compliance with the charter or statutory requirements." 26 Am. & Eng. Enc. Law, 2d ed. p. 929.

"Interest is calculated on the balance of two cross claims where both are allowed, from the date when both became due." 19 Enc. Pl. & Pr. 810; Tucker v. Jewett, 32 Conn. 563; Meriwether v. Bird, 9 Ga. 594; Adkins v. Ware, 35 Tex. 577; Brown v. Montgomery, 19 Tex. Civ. App. 548, 47 S. W. 803; Whaley v. Broadwater, 78 Ga. 336.

"Admissions made in a pleading will bind the party in a suit in which they are filed, though such pleadings have been stricken out or withdrawn." 1 Am. & Eng. Enc. Law, 2d ed. p. 719.

Bruce, J. (after stating the facts as above). The first three assignments of error were as follows:

### 1.

That the court erred in denying the motion of the defendant made at the beginning of the trial for judgment on the pleadings, upon the ground and for the reason that, under the pleadings, it affirmatively appears that if said stock was sold as plaintiff alleged, then said stock of the plaintiff was not canceled, the note given therefor $2,100 remained unpaid, and not canceled, and there was due and unpaid on the same $1,372, with interest.

That under the pleadings the counterclaim for said note of $2,100 was a proper offset to the demand of said plaintiff, and that therefore the said defendant in any event had the right as a matter of law to apply said credit of the plaintiff upon the said stock and note so given. Furthermore, the complaint does not set forth an action for money had and received or common-law action of accounting, wherefore the court erred.

### 2.

The court erred in overruling the motion of the defendant made at the close of plaintiff's case for the dismissal of the action, made upon the ground and for the reason that the plaintiff failed to establish by his evidence a cause of action as alleged in his complaint, and that the denial of said motion was contrary to law under the evidence adduced.

### 3.

The court erred in overruling the motion of the defendant for a directed verdict made at the close of the case, upon the grounds and for the reasons set forth in said motion.

There is obviously no merit in any of these assignments. They are all based upon a common misunderstanding of the pleadings and on the supposition that the action is based on the plaintiff's contract to purchase stock from defendant, and that the defendant has pleaded and established a right to recover under a counterclaim which is based on the $2,100 note. They also ignore the fact that the plaintiff in his reply expressly alleges and has introduced competent evidence in support of the proposition that the said $2,100 note "was given without any consideration whatsoever other than that the same might appear on the books and among the assets of the defendant for the purpose of constituting an apparent offset for the transfer of said stock, but that the said note was not given in payment for or in consideration of the purchase of said stock; it being agreed and understood by and between plaintiff and defendant at the time of the said purchase that the stock should be retained in the possession of the defendant until sold by plaintiff, and that settlements for such stock so sold by plaintiff should be turned in to defendant to apply upon the purchase price due from plaintiff to defendant for said stock in manner as alleged in paragraph 2 of the complaint."

Counsel for appellant indeed has mistaken matters of inducement for material issues. The agreement upon which plaintiff's cause of action is based is not the contract for the purchase of the seventy-five allotments of stock, but the agreement on the part of the defendant to pay plaintiff for the land which plaintiff had bought with the stock which had been sold to him, and had surrendered to the defendant on the promise by such defendant that it would pay him for such land the difference between its value and the $28, which plaintiff had agreed to pay for each of the seventy-five allotments sold to him, and thirty-eight of which he had in turn traded for said land. Though it is true that the original contract or agreement was in writing, the two agreements are in no way inconsistent with one another. The action indeed is not based on paragraph 2 of the complaint, which sets forth matter

of inducement merely, but on paragraph 3, which alleges: "That under the aforesaid agreement during the month of February, 1913, plaintiff sold thirty-eight allotments of said stock, of the value of $1,900, at the agreed price of $50 per share for a total sum of $1,900, settlement being taken therefor in the form of farm lands, and that said entire settlement was turned over and accepted by the defendant, with the agreement and understanding that defendant should account in cash to plaintiff for the difference over and above the price plaintiff had agreed to pay to defendant for the said stock, which said excess amounted to the sum of $836."

The situation then, as testified to by the plaintiff (it was for the jury to say whether his version of the story was true or not), was as follows: Jensen, the plaintiff, had subscribed for seventy-five allotments of stock at $28 an allotment, or at a price of $2,100. He had given a note for $2,100 therefor, but this was merely for bookkeeping purposes, the agreement being that he should only pay for the stock as it was sold by him. Prior to the transaction in question, he had sold and accounted to the defendant, the Northwestern Underwriters Association, for twenty-six allotments. This left a balance over of forty-nine allotments. In the particular transaction and the one that is sued upon, he sold to Fox thirty-eight allotments for land which was valued at $1,900, or at a price of $50 an allotment. This land he turned over to the defendant company, and the defendant company agreed to pay him the difference between the $28 an allotment, the price he had agreed to pay, and the $50 an allotment for which the allotments had been sold to Fox and which was in the shape of the land which had been turned over to the defendant company. This difference amounted to the sum of $836, and this sum the defendant owes the plaintiff, less an offset for money loaned of $315.

Nor, under the pleadings and the evidence in the case, can the defendant offset the promissory note for $2,100. This counterclaim is somewhat irregularly pleaded as far as form is concerned, but we do not disallow it on that ground. The reason for disallowance is that it pleads nothing in substance, and that the evidence does not supply the want. It seeks to recover on a note the consideration of which was capital stock, and yet it positively states that "the stock was canceled." This latter allegation destroys the force of the whole counterclaim, as

it can mean nothing else but that the consideration had failed. The plaintiff, too, testified that the note was given merely as a memorandum, and that the true agreement was that the stock should only be paid for as it was resold, and whether this testimony was true or not was for the jury to determine.

Nor can we hold that the plaintiff is precluded from denying this counterclaim or set-off on account of the stipulation of counsel, which was made at the end of the trial and which was to the effect that "it is understood between the parties that, if the plaintiff should recover, the defendant is entitled to be credited with the amount of the counterclaims set up in the answer, and, if the plaintiff does not recover, that the defendant is not entitled to any judgment on such counterclaims, for the reason that the amount thereof has been credited to the plaintiff on the books of the company."

On account of the fact that the defendant claimed in his answer that the stock had been canceled, and thus conceded that the consideration for the note had failed; on account of the fact that in its prayer for affirmative relief the defendant only asked for the amount of the counterclaims which were properly pleaded, and did not include the amount of the note in question, and from a perusal of the evidence and the state of the record generally, we are satisfied that counsel never at any time intended that this stipulation should include the $2,100 note.

Even if such were the intention, neither the jury nor the trial judge were bound thereby. The stipulation, if construed to include the $2,100 note, was, at the most, an agreement upon a legal conclusion, and what is more it was a legal conclusion which was clearly erroneous. Stipulations of this kind are always and can always be properly disregarded by the trial courts. If they can be disregarded by the trial judges, much more can they be disregarded by the appellate tribunals. Appellate tribunals, indeed, are as a rule only justified in reversing judgments if errors of law have been committed and they will never reverse a judgment where no error of law has been committed, and merely because counsel have inadvertently stipulated an erroneous opinion as to the law of the case.

See Prescott v. Brooks, — N. D. —, 94 N. W. 88; Owen v. Herzihoff, 2 Cal. App. 622, 84 Pac. 274; 36 Cyc. 1285, 1286.

As we view the evidence it is hardly necessary to decide whether the

stock subscription was in fact canceled. To avoid all controversy, however, we will pass upon the question and upon the correctness of the court's instruction to the jury, that

"You are further instructed that there is no evidence in this case showing that there was in fact a valid cancelation of this stock or the stock subscription."

We hold that there was no valid cancelation.

The testimony upon which defendant relies to establish cancelation is as follows:

Q. What did you do to cancel them?

A. Well, we had these in the office, these certificates were never taken away from the office. We asked for payment of the note which we didn't get. The certificates were then placed back in the subscription book, and marked canceled for nonpayment and the note attached thereto.

Q. How did you do it?

A. I presume I told the bookkeeper to do it, I did'nt do it myself, I don't do any of the mechanical work up there.

Q. Did the bookkeeper make the entries concerning this matter?

A. I presume he did.

Q. I understand then, Mr. Hand, that you—It was you really that made the entries of cancelation in the first instance on these certificates, or were they entered under your direction first by Mr. Mason?

A. On the certificates? That writing on the certificates seems to be mine. I think it is.

Q. You acted upon your own discretion in doing that?

A. I decided it, yes, I generally did at that time I think,—decide those questions when they came in.

Each of the three applications for stock provide:

"That if settlement herein provided should not be completed in cash within the time agreed upon, the said Burt Mason, fiscal agent, is hereby authorized to surrender the certificates back for cancelation to the companies which have respectively issued the same."

Each of these applications also contained this provision:

"Said total payments to be made as follows:

"Notes for $700, due October 1, 1913."

And each subscription is addressed as follows:

"I, P. S. Jensen, of Grand Forks, North Dakota, hereby subscribe with Burt Mason, fiscal agent."

Counsel for the respondent contends that the forfeiture provided for is conditioned on the failure of the plaintiff to pay, presumably Burt Mason, the fiscal agent, the sum of $700; that the authority to confer, if expressly conferred at all, is conferred not upon Mason or any other person, but upon the respective companies, the Northwestern Underwriters Association and the Northern Fire and Marine Insurance Company; that the matter of forfeiture is not prescribed in the written agreement.

He calls attention to § 4526 of the Compiled Laws of 1913, which provides that: "When a corporation is authorized by the terms of subscription, or otherwise, to forfeit stock for nonpayment, it may either forfeit the stock or recover the amount of the subscription, but it cannot do both." He argues that a cancelation of the stock in February or March, 1913, and prior to the time the subscription price was due under the conditions of the subscription contract, was not justified by that contract. He admits that defendant had in its possession at that time a certain promissory note executed by plaintiff for $2,100, payable on demand, and that there is some evidence in the record that this note evidenced the aggregate amount due from plaintiff to defendant on his stock subscription. He alleges, however, that there is nothing to show whether the several notes called for in the subscription contract which were to be due October 1st, were not executed in accordance with that contract, and he argues that whether they were or not defendant's stipulation to submit to a cancelation for nonpayment on October 1, 1913, could not be altered or made to apply to the conditions of the note given a month and eleven days after, and not for $700 but for $2,100, and not payable October 1st, but payable on demand, without a new express agreement to that effect.

He argues also that forfeiture clauses are strictly construed; that the subscription contract conferred the right to forfeit upon the respective companies, and upon the companies alone. He cites authorities to the effect that "the general power to do any act or make any contract is in the board of directors." 21 Am. & Eng. Enc. Law, 503. And that "the forfeiture must be declared by duly appointed or elected directors and by the number required to conduct corporate business.

The directors cannot delegate their powers and duties in the premises. It is also necessary that the resolution should designate the stock to be forfeited." 26 Am. & Eng. Enc. Law, 929. He also cites authority to the effect that "the power to declare a forfeiture of shares for non-payment of the amount due thereon must be exercised in strict compliance with the charter or statutory requirements." Ibid. We think he is right in all of these contentions, and that the instruction of the court was therefore correct.

Counsel for appellant, however, seems almost to concede this fact. He argues, however, that the cancelation was not a cancelation of his stock, but of the contract for its purchase.

Whether this would make any difference in the case it is not necessary for us to say, as the answer at no time claims that this contract for the purchase of the stock had been canceled, but merely the stock itself.

It is next claimed that the court erred in his instruction as to the burden of proof and the issues involved in the case. We find no error. The criticism of appellant is based largely on the theory that the original written contract for the purchase of the stock was sued upon, which, as we have before stated, was not the case.

The jury was certainly justified in holding that the action was based on the land transfer, that it was Jensen's rather than the defendant's stock which was sold, and that the original contract was still in operation and could still be relied upon for the purpose of determining what Jensen should be charged by the company for that stock. Hand, the secretary of the company, indeed, expressly testified that the reason he consented to the Fox land deal was that Jensen might pay the company his indebtedness including that on the $2,100 transaction.

There was at the most a conflict in the testimony, and it was for the jury to decide whose version of the story was correct. This matter was properly submitted to the jury by the instructions, and the verdict of the jury must be controlling. The issue in the case as presented by the trial judge in these instructions was whether or not "the plaintiff, Jensen, sold to Mr. Fox the thirty-eight allotments out of the seventy-five allotments which he had therefore purchased from the defendant company, or whether or not the thirty-eight allotments which were sold to Mr. Fox by him were really shares belonging to the company, and not shares he had theretofore purchased. If you should find from quite

fair preponderance of the evidence in this case that the plaintiff, Jensen, did sell to Mr. Fox the thirty-eight allotments out of the seventy-five allotments purchased by him from the defendant, then you should find for the plaintiff, but if you should find that a new arrangement had been made between the parties, and that the thirty-eight allotments which were sold by the plaintiff to Mr. Fox were the shares of the company, and that the sale was made under an agreement between the company and Jensen that he was to receive as compensation for his services in making such sale a cancelation of his indebtedness on the five promissory notes which are set up as a counterclaim, then you should find for the defendant."

The testimony of Hand, the secretary of the company, to us clearly establishes a liability. He testified. "I meant when we canceled this deal here, we never severed our connection with Mr. Jensen. We wanted to pay his account that he owed us on this note for $2,100, and pay the notes where we had advanced him money." Again he testifies, "I told him that we had canceled his stock certificates for nonpayment of the note. I told him that we asked him for payment of the other note, the notes for money which we had advanced him. Then he told me about this Fox deal. He said he had been talking with Fox, and if he had a good man down there, he could clean the deal up and pay us what he owed us. I immediately got interested in it because it would clean up his account, and I sent Mr. Hanlon, who was in the employ of our company at the time on a salary, to meet Mr. Fox and close up this land deal, and also to appraise the land and find out what it was worth." I told Jensen we cleaned up what he owed us. I told him I had canceled the stock. I think that is the reason he came in, because we had written to him about the nonpayment of this note. I think it was probably he was told that the stock had been canceled, and it was then that he started talking about the Fox deal. Then we talked about the advances that he still owed. I did not say anything about what he should get out of this Fox deal. Only that was our agreement before he went that it was to clean up his indebtedness to the company, didn't say anything more about it at all."

From all of this we can infer nothing else than that the cancelation of the stock, if any, was kept in abeyance until after the closing of the Fox deal, and that as far as that deal was concerned, the old agreement

was still in force. If the sale of the stock was canceled and was considered canceled by Hand, how did he expect to have the $2,100 note paid thereby, and if the stock was canceled was not the debt under the $2,100 note canceled also? Hand does not offer a scintilla of testimony in regard to any other consideration for Jensen's services, or that anything was said about the company stock rather than that of Jensen being transferred to Fox.

Appellant next contends that the learned trial judge erred in his charge to the jury in regard to the computation of interest.

"Plaintiff," he says, "sued for $836, and defendant set up counterclaims aggregating $315. These counterclaims were not denied in the reply, so they stood admitted in the pleadings. They are based on promissory notes given by plaintiff to defendant in November, December, and January, preceding the Fox deal, and are for sums varying from $25 to $100, drawing interest before maturity at 7 and 8 per cent and after maturity at 12 per cent.

"The court figured interest on these notes up to the time of the commencement of suit, defendant argues that interest should have been computed up to the date of the verdict, a little over two years later. The difference would amount to twenty odd dollars.

"The court, in computing interest, assumed that the date of the application of the amount due on these notes to plaintiff's claim should be governed by the date of the commencement of the action, March 18, 1913."

We think there was no error in this instruction. "Interest is calculated on the balance of two cross claims, where both are allowed from the date when both became due." 19 Enc. Pl. & Pr. 810.

Error is next assigned on the overruling of defendant's objection to the introduction in evidence of the original answer of the defendant.

Counsel, however, does not argue any particular prejudice from the admission of this answer, and we fail to see any.

It is next objected that the court erred in allowing in evidence testimony which tended to vary and change the original written agreement for the purchase of the stock, and which he claims was evidenced by the note. This evidence, however, was competent in relation to the oral agreement which was sued upon, and, as we have before said, it was on the oral, and not the written, contract that the action was based.

It is also urged that the court erred in excluding certain evidence offered by the defendant.   We are satisfied, however, that the matters involved have already been sufficiently gone over, and that no prejudice has been shown.

The judgment of the District Court is affirmed.

CHRISTIANSON, J.  I concur in the result.